

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 28 2008 ★
BROOKLYN OFFICE

LETHANIA GARCIA,

                                      Plaintiff,    **COMPLAINT**

-against-

THE CITY OF NEW YORK; COMMISSIONER
RAYMOND W. KELLY; COMMISSIONER MARTIN F.
HORN; CAPTAIN WHITE; DET. KANE; P.O. ERIC J.
ORTIZ, Shield # 12565; P.O. JOHN DOES # 1-15;
WARDEN JOHN DOES # 1-2; SUPERVISOR C.O. JOHN
DOES # 1-3; and C.O. JOHN DOES # 1-15 the individual
defendants sued individually and in their official capacities,

ECF Case

Jury Trial Demanded

**MAUSKOPF, J.**

                                    Defendants.

**GO, M.J.**

------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

      1.     This is a civil rights action in which plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York. The claims arise from incidents, which occurred on or about June 26, 2006, August 21, 2006, and April 14, 2007. During the incidents, the City of New York, and members of the New York City Police Department ("NYPD") and New York City Department of Correction ("DOC") subjected plaintiff to, among other things, false arrest and imprisonment, excessive force, assault and battery, unlawful search and seizure, unlawful strip-search, malicious prosecution, unconstitutional conditions of confinement, intentional and negligent infliction of emotional distress, retaliation for free speech, fabricated evidence, conspiracy, harassment, abuse of process, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and

continuation of an unlawful municipal policy, practice, and custom. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.  This action is brought pursuant to 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.  Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law (with respect to the claims arising from April 14, 2007). A notice of claim was duly filed on the City of New York within 90 days of the incidents at issue, more than 30 days have elapsed since such filing and the City has refused to settle plaintiff's claims. Moreover, this action has been filed within one year and 90 days of the incidents that are the basis of this claim.

4.  Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in Kings County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

5.  Plaintiff Lethania Garcia is a resident of the state of New York, Kings County.

6.  Defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.  Defendant Raymond W. Kelly is the Commissioner of the NYPD who violated plaintiff's rights as described herein.

8.  Defendant Captain White is a New York City Police Captain employed with the 79th Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

9.  Defendant Detective Kane is a New York City Police Detective employed with the 79th Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

10. Defendant P.O. Eric J. Ortiz is a New York City Police Officer, assigned Shield # 12565, employed with the 79th Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

11. Defendant Police Officer John Does # 1-15 are New York City Police Officers employed with the 79th Precinct located in Brooklyn, New York who violated plaintiff's rights as described herein.

12. Defendant Warden John Does # 1-2 are New York City Correction Warden employed at RNDC - C-74 Building and/or OBCC, located at Rikers Island, Elmhurst, New York, who violated plaintiff's rights as described herein.

13. Defendant Supervisor C.O. John Does # 1-3 are New York City Correction Supervisor employed at RNDC - C-74 Building and/or OBCC, located at Rikers Island, Elmhurst, New York, who violated plaintiff's rights as described herein.

14. Defendant C.O. John Does # 1-15 are New York City Correction Officers employed at RNDC - C-74 Building and/or OBCC, located at Rikers Island, Elmhurst, New York, who violated plaintiff's rights as described herein.

15. The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

16. The following is a summary set forth for the purpose of demonstrating, and providing notice of plaintiff's claims against the defendants. Plaintiff has not set forth each and every fact concerning the incident(s) described below.

### A. June 26, 2006 Incident

17. On June 26, 2006 at approximately 10:00 p.m. to 11:00 p.m., at and in the vicinity of 555 Leffrets Place, Brooklyn, New York, police officers assigned to the 79th Precinct located in Brooklyn, New York, including upon information and belief, defendants Captain White, Det. Kane, and P.O. John Does # 1-5, at times acting in concert and at times acting independently, committed the following illegal acts against plaintiff.

18. On June 26, 2006 at approximately 10:00 p.m. to 11:00 p.m., at and in the vicinity of 555 Leffrets Place, Brooklyn, New York, police officers assigned to the 79th Precinct located in Brooklyn, New York, including upon information and belief, defendants Captain White, Det. Kane, and P.O. John Does # 1-5, at times acting in concert and at times acting independently, without either an arrest warrant, a search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime, falsely arrested plaintiff.

19. Once defendants approached plaintiff, plaintiff was not free to disregard the defendants' questions, walk way or leave the scene.

20. During the arrest of plaintiff, defendants Captain White, Det. Kane, and P.O. John Does # 1-5, maliciously, gratuitously, and unnecessarily drew firearms at plaintiff, jabbed a firearm in plaintiff's chest, grabbed and shoved plaintiff, threw plaintiff to the ground,

4

forced a knee into plaintiff's face, twisted plaintiff's arms, and placed excessively tight handcuffs on plaintiff's wrists. Plaintiff was injured as a result of these acts. Those defendants who did not touch plaintiff witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

21. Thereafter, defendants Captain White, Det. Kane, and P.O. John Does # 1-5 brought plaintiff to the 79th Precinct in Brooklyn, New York, where Captain White, Det. Kane, and P.O. John Does # 1-5 interrogated plaintiff and drew a firearm at plaintiff and pointed it at his chest while handcuffed, before transferring him to Brooklyn Central Booking.

22. Defendant Captain White supervised Det. Kane, and P.O. John Does # 1-5 in the above-detailed unlawful conduct.

23. While at Central Booking plaintiff was subjected to depraved, filthy, and inhumane conditions of confinement, including overcrowding, temperature extremes, and toilet facilities that overflowed onto the floor.

24. The guards and personnel assigned to Central Booking looked the other way at these dangerous conditions, and ignored arrestees, including plaintiff, who sought their assistance.

25. After arraignment, plaintiff was remanded to the custody of DOC and transported to RNDC - C-74 Building located at Rikers Island, East Elmhurst, New York.

26. While at RNDC - C-74 Building, defendants Warden John Doe # 1 and Supervisor C.O. John Doe # 1, and C.O. John Does # 1-5 subjected plaintiff to an unlawful non-private strip search without reasonable suspicion, justification or probable cause.

27.  Plaintiff was subjected to the DOC's unlawful policy of strip-searching in public regardless of reasonable suspicion or probable cause. He was forced to squat and expose his private areas.

28.  The fact that the strip search of plaintiff was carried out in a non-private manner, regardless of the criminal charge, is sufficient in and of itself to violate the Constitution. It is well established that, even where there is justification for a strip search the search must be conducted in a reasonable manner. A strip search is unreasonable if it is carried out in a non-private manner and in the presence of nonessential people, such as other detainees and inmates.

29.  No illegal items, narcotics, or contraband were recovered from plaintiff during the above-described strip search.

30.  Eventually, plaintiff pleaded guilty to an offense concerning this arrest.

**B.   August 21, 2006 Incident**

31.  On August 21, 2006 at approximately 4:30 p.m., at and in the vicinity of "Family Drug Store" at Fulton Avenue between Clarkson and Franklin Avenues, Brooklyn, New York, police officers assigned to the 79th Precinct located in Brooklyn, New York, including upon information and belief, defendants Det. Kane, and P.O. John Does # 6-10, at times acting in concert and at times acting independently, committed the following illegal acts against plaintiff.

32.  On August 21, 2006 at approximately 4:30 p.m., at and in the vicinity of "Family Drug Store" at Fulton Avenue between Clarkson and Franklin Avenues, Brooklyn, New York, police officers assigned to the 79th Precinct located in Brooklyn, New York, including upon information and belief, defendants Det. Kane, and P.O. John Does # 6-10, at times acting in concert and at times acting independently, without either an arrest warrant, a search warrant,

6

probable cause, or reasonable suspicion that plaintiff had committed a crime, falsely arrested plaintiff.

33. Once defendants approached plaintiff, plaintiff was not free to disregard the defendants' questions, walk way or leave the scene.

34. During the arrest of plaintiff, defendants Det. Kane, and P.O. John Does # 6-10, maliciously, gratuitously, and unnecessarily drew firearms at plaintiff, grabbed and shoved plaintiff, threw plaintiff into a shelf, twisted plaintiff's arms, and placed excessively tight handcuffs on plaintiff's wrists. Plaintiff was injured as a result of these acts. Those defendants who did not touch plaintiff witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

35. Thereafter, defendants Det. Kane, and P.O. John Does # 6-10 brought plaintiff to the 79th Precinct in Brooklyn, New York, where Det. Kane and P.O. John Does # 6-10 interrogated plaintiff, and a Spanish male officer slapped plaintiff in the head at least twice while plaintiff was handcuffed to a pole, before transferring him to Brooklyn Central Booking.

36. In addition, defendants Captain White, Det. Kane, and P.O. John Does # 6-10 subjected plaintiff to an unlawful non-private strip-search regardless of reasonable suspicion or probable cause at the above location.

37. Plaintiff was subjected to NYPD's unlawful policy of strip-searching individuals in public regardless of reasonable suspicion or probable cause at the above location.

38. The fact that the strip search of plaintiff was carried out in a non-private manner, regardless of the criminal charge, is sufficient in and of itself to violate the Constitution. It is well established that, even where there is justification for a strip search the search must be

7

conducted in a reasonable manner. A strip search is unreasonable if it is carried out in a non-private manner and in the presence of nonessential people, such as other detainees and inmates.

39. Upon information and belief, defendant Captain White supervised Det. Kane and P.O. John Does # 6-10 in the above-detailed unlawful conduct.

40. Further, while at Central Booking plaintiff was subjected to depraved, filthy, and inhumane conditions of confinement, including overcrowding, temperature extremes, and toilet facilities that overflowed onto the floor.

41. The guards and personnel assigned to Central Booking looked the other way at these dangerous conditions, and ignored arrestees, including plaintiff, who sought their assistance.

42. Further, while plaintiff was incarcerated at the 79th Precinct and Central Booking awaiting arraignment, defendants Captain White, Det. Kane, and P.O. John Does # 6-10, pursuant to a conspiracy, falsely and maliciously told the Kings County District Attorney's Office that plaintiff had committed a serious crime(s); and the District Attorney's Office decided to prosecute plaintiff until the case was dismissed by the grand jury.

43. Defendants Captain White, Det. Kane, and P.O. John Does # 6-10 initiated the above-stated malicious prosecution against plaintiff.

44. Defendants Captain White, Det. Kane, and P.O. John Does # 6-10 lacked probable cause to believe the above-stated malicious prosecution could succeed.

45. Defendants Captain White, Det. Kane, and P.O. John Does # 6-10 acted with malice to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution.

46. The above-stated malicious prosecution, defendants Captain White, Det. Kane, and P.O. John Does # 6-10 initiated, caused a sufficient post-arraignment liberty restraint on plaintiff.

47. The above-stated malicious prosecution, defendants Captain White, Det. Kane, and P.O. John Does # 6-10 initiated, terminated in plaintiff's favor.

48. After arraignment, plaintiff was remanded to the custody of DOC and transported to RNDC - C-74 Building located at Rikers Island, East Elmhurst, New York.

49. While at RNDC - C-74 Building, defendants Warden John Doe # 1 and Supervisor C.O. John Doe # 2, and C.O. John Does # 6-10 subjected plaintiff to an unlawful non-private strip search without reasonable suspicion, justification or probable cause.

50. Plaintiff was subjected to the DOC's unlawful policy of strip-searching in public regardless of reasonable suspicion or probable cause. He was forced to squat and expose his private areas.

51. The fact that the strip search of plaintiff was carried out in a non-private manner is sufficient in and of itself to violate the Constitution. It is well established that, even where there is justification for a strip search the search must be conducted in a reasonable manner. A strip search is unreasonable if it is carried out in a non-private manner and in the presence of nonessential people, such as other detainees.

52. No illegal items, narcotics, or contraband were recovered from plaintiff during the above-described strip search.

**C.   April 14, 2007 Incident**

53. On April 14, 2007, at approximately 6:45 p.m., at and in the vicinity of 163 Leffrets Place, Apt. #15, Brooklyn, New York, police officers assigned to the 79th Precinct

located in Brooklyn, New York, including upon information and belief, defendants P.O. Eric J. Ortiz, and P.O. John Does # 11-15, at times acting in concert and at times acting independently, committed the following illegal acts against plaintiff.

54. On April 14, 2007, at approximately 6:45 p.m., at and in the vicinity of 163 Leffrets Place, Apt. #15, Brooklyn, New York, police officers assigned to the 79th Precinct located in Brooklyn, New York, including upon information and belief, defendants Captain White, P.O. Eric J. Ortiz, and P.O. John Does # 11-15, at times acting in concert and at times acting independently, without either an arrest warrant, a search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime, falsely arrested plaintiff.

55. Once defendants approached plaintiff, plaintiff was not free to disregard the defendants' questions, walk way or leave the scene.

56. During the arrest of plaintiff, defendants Captain White, P.O. Eric J. Ortiz, and P.O. John Does # 11-15, maliciously, gratuitously, and unnecessarily drew firearms at plaintiff, grabbed and pushed plaintiff, threw plaintiff on a wall, pulled plaintiff, twisted plaintiff's arms, placed excessively tight handcuffs on plaintiff's wrists, struck plaintiff in the face while handcuffed. Plaintiff was injured as a result of these acts. Those defendants who did not touch plaintiff witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

57. Thereafter, defendants P.O. Eric J. Ortiz, and P.O. John Does # 11-15 brought plaintiff to the 79th Precinct in Brooklyn, New York, where .O. Eric J. Ortiz, and P.O. John Does # 11-15 interrogated plaintiff, and a Spanish male officer punched plaintiff in the chest while plaintiff was handcuffed to a pole, before transferring him to Brooklyn Central Booking.

58. In addition, defendants P.O. Eric J. Ortiz, and P.O. John Does # 11-15 subjected plaintiff to an unlawful non-private strip-search regardless of reasonable suspicion or probable cause at the above location.

59. Plaintiff was subjected to NYPD's unlawful policy of strip-searching individuals in public regardless of reasonable suspicion or probable cause at the above location.

60. The fact that the strip search of plaintiff was carried out in a non-private manner, regardless of the criminal charge, is sufficient in and of itself to violate the Constitution. It is well established that, even where there is justification for a strip search the search must be conducted in a reasonable manner. A strip search is unreasonable if it is carried out in a non-private manner and in the presence of nonessential people, such as other detainees and inmates.

61. Upon information and belief, defendant Captain White supervised P.O. Eric J. Ortiz, and P.O. John Does # 11-15 in the above-detailed unlawful conduct.

62. Further, while at Central Booking plaintiff was subjected to depraved, filthy, and inhumane conditions of confinement, including overcrowding, temperature extremes, and toilet facilities that overflowed onto the floor.

63. The guards and personnel assigned to Central Booking looked the other way at these dangerous conditions, and ignored arrestees, including plaintiff, who sought their assistance.

64. Further, while plaintiff was incarcerated at the 79th Precinct and Central Booking awaiting arraignment, defendants Captain White, P.O. Eric J. Ortiz, and P.O. John Does # 11-15 pursuant to a conspiracy, falsely and maliciously told the Kings County District Attorney's Office that plaintiff had committed a serious crime(s); and the District Attorney's Office decided to prosecute plaintiff until the case was dismissed by the grand jury.

65. Defendants Captain White, P.O. Eric J. Ortiz, and P.O. John Does # 11-15 initiated the above-stated malicious prosecution against plaintiff.

66. Defendants Captain White, P.O. Eric J. Ortiz, and P.O. John Does # 11-15 lacked probable cause to believe the above-stated malicious prosecution could succeed.

67. Defendants Captain White, P.O. Eric J. Ortiz, and P.O. John Does # 11-15 acted with malice to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution.

68. The above-stated malicious prosecution, defendants Captain White, P.O. Eric J. Ortiz, and P.O. John Does # 11-15 initiated, caused a sufficient post-arraignment liberty restraint on plaintiff.

69. The above-stated malicious prosecution, defendants Captain White, P.O. Eric J. Ortiz, and P.O. John Does # 11-15 initiated, terminated in plaintiff's favor.

70. After arraignment, plaintiff was remanded to the custody of DOC and transported to OBCC located at Rikers Island, East Elmhurst, New York.

71. While at OBCC, defendants Warden John Doe # 2 and Supervisor C.O. John Doe # 3, and C.O. John Does # 11-15 subjected plaintiff to an unlawful non-private strip search without reasonable suspicion, justification or probable cause.

72. Plaintiff was subjected to the DOC's unlawful policy of strip-searching in public regardless of reasonable suspicion or probable cause. He was forced to squat and expose his private areas.

73. The fact that the strip search of plaintiff was carried out in a non-private manner is sufficient in and of itself to violate the Constitution. It is well established that, even where there is justification for a strip search the search must be conducted in a reasonable

manner. A strip search is unreasonable if it is carried out in a non-private manner and in the presence of nonessential people, such as other detainees.

74. No illegal items, narcotics, or contraband were recovered from plaintiff during the above-described strip search.

### D. General Allegations

75. Defendants Captain White, Det. Kane, P.O. Eric J. Ortiz, and P.O. John Does # 1-15 were motivated, and conspired and participated in the above described unlawful conduct, including the unlawful arrests, excessive uses of force, and malicious prosecutions to intentionally harass and intimidate plaintiff in an illegal attempt to coerce information from him concerning other individuals.

76. The aforesaid events are not an isolated incident. Defendants Commissioners Raymond W. Kelly and Martin F. Horn, and Captain White have been aware (from lawsuits, notices of claim and complaints) that many of the NYPD's and DOC's officers are insufficiently trained on the proper way to use force, search arrestees or detainees, and treat innocent and/or uninvolved individuals who are found at an incident scene and/or investigation location. Commissioners Raymond W. Kelly and Martin F. Horn, and Captain White are further aware that such improper training has often resulted in a deprivation of civil rights. Despite such notice, Commissioners Raymond W. Kelly and Martin F. Horn, and Captain White have failed to take corrective action. This failure caused the officers in the present case to violate the plaintiff's civil rights.

77. Moreover, Commissioners Raymond W. Kelly and Martin F. Horn, and Captain White were aware prior to the incident that the defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite

such notice, Commissioners Raymond W. Kelly and Martin F. Horn, and Captain White have retained these officers, and failed to adequately train and supervise them.

78. Plaintiff did not resist arrest at any time during the above incidents.

79. Plaintiff did not engage in suspicious, unlawful or criminal activity prior to or during the above incidents.

80. The individual defendants did not observe plaintiff engaged in suspicious, unlawful, or criminal conduct at any time prior to or during the above incidents.

81. At no time prior, during, or after the above incidents were the individual defendants provided with information or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had engaged in suspicious, unlawful or criminal conduct.

82. As a result of defendants' actions plaintiff experienced personal and physical injuries (including contusions, lacerations, bruises, aches and swelling), pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

### FEDERAL AND STATE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

83. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

84. The conduct of defendant officers, as described herein, amounted to false arrest and imprisonment, excessive force, assault and battery, unlawful search and seizure, unlawful strip-search, malicious prosecution, unconstitutional conditions of confinement, intentional and negligent infliction of emotional distress, retaliation for free speech, fabricated evidence, conspiracy, harassment, abuse of process, gross negligence, negligent hiring and

retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

85. The conduct of the defendant officers, as described herein, violated plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3), the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and New York State law, by committing false arrest and imprisonment, excessive force, assault and battery, unlawful search and seizure, unlawful strip-search, malicious prosecution, unconstitutional conditions of confinement, intentional and negligent infliction of emotional distress, retaliation for free speech, fabricated evidence, conspiracy, harassment, abuse of process, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

86. Defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his rights secured by 42 U.S.C. §§ 1983 and 1985(3), the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and New York State law.

87. Defendants acted recklessly to deprive plaintiff of his rights secured by 42 U.S.C. §§ 1983 and 1985(3), the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and New York State law.

88. Defendants acted negligently to deprive plaintiff of his rights secured by 42 U.S.C. §§ 1983 and 1985(3), the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and New York State law.

89. As a direct and proximate result of the misconduct and abuse detailed above, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

90. The plaintiff is also entitled to receive punitive damages because defendants' actions were motivated by extreme recklessness and indifference to the plaintiff's rights.

## FEDERAL AND STATE CLAIMS AGAINST DEFENDANT KELLY

91. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

92. Defendants Raymond W. Kelly Martin F. Horn are liable, in his official capacity, to plaintiff because: (1) they created and allowed to continue a policy or custom under which unconstitutional practices occurred, (2) they were grossly negligent in supervising subordinates who committed the wrongful acts, and (3) they exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring.

93. Upon information and belief, defendants Kelly and Horn were aware from notices of claim, lawsuits, complaints, and the NYPD's and DOC's own observations that the officers sued in the present case were unfit to be officers, and that it was highly likely that they would commit the acts alleged in the present case.

94. Nevertheless, defendants Kelly and Horn exercised deliberate indifference by failing to take remedial action.

95. The aforesaid conduct by defendants Kelly and Horn violated plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and New York State law, by failing to re-train the defendant subordinate officers, failing to adequately discipline the defendant subordinate officers, failing to adequately investigate prior complaints against the defendant subordinate officers either at the facilities where the incidents occurred and/or at their Headquarters located in New York, New York, and creating a culture where officers are encouraged to ignore, harass, assault and violate those who question their authority, and acting in a manner which amounted to negligent hiring, training, monitoring and retention of incompetent employees, in violation of state law.

96. As a direct and proximate result of the misconduct and abuse detailed above, plaintiff experienced personal injuries, pain and suffering, fear, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

97. The aforesaid conduct of defendants Kelly and Horn amounted to negligent hiring, training, monitoring and retention of incompetent employees, in violation of state law.

### FEDERAL AND STATE CLAIMS AGAINST THE CITY OF NEW YORK

98. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

99. The City of New York directly caused the constitutional violations suffered by plaintiff.

100. Upon information and belief, the City of New York was aware from notices of claim, lawsuits, complaints, and from the NYPD's and DOC's own observations, that the officers involved in the present case were unfit to be police officers, and that it was highly likely that they would commit the acts alleged in the present case.

101. Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action. The City of New York failed to properly train, re-train, supervise, discipline, monitor, and improperly utilized and retained these officers. Moreover, the City of New York failed to adequately investigate prior complaints against the officers and created a culture where officers can ignore, harass, assault and violate individuals without consequence. Indeed, when individuals file complaints against officers, the City has a practice of failing to substantiate or address the complaint, even under circumstances where the complaint is corroborated and credible, and the account given by the officer is unworthy of belief.

102. The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and New York State law.

103. Moreover, the aforesaid conduct by the City of New York amounted to negligent hiring, training, monitoring and retention of incompetent employees, in violation of state law.

104.    Finally, under state law, the City of New York is responsible for its employees' actions under the doctrine of respondeat superior.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

   a.   Compensatory damages in an amount to be determined by a jury;

   b.   Punitive damages in an amount to be determined by a jury;

   c.   Costs, interest and attorney's fees; and

   d.   Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:   New York, New York
         May 27, 2008

> MICHAEL O. HUESTON, ESQ.
> *Attorney for Plaintiff*
> 350 Fifth Avenue, Suite 4810
> New York, New York 10118
> (212) 643-2900
> mhueston@nyc.rr.com
> By:
>
> _____
> MICHAEL O. HUESTON (MH-0931)